Maria SPANOS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 8963.

United States Court of Appeals
Fourth Circuit.

Argued June 7, 1963.

Decided Sept. 23, 1963.

Donald N. Rothman, Baltimore, Md. (Irving Shulbank, Kalman R. Hettleman, and Gordon, Feinblatt & Rothman, Baltimore, Md., on brief), for appellant.

Robert J. Golten, Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph Kovner, Attorneys, Department of Justice, Joseph D. Tydings, U. S. Atty., and Robert W. Kernan, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and LEWIS, District Judge.

HAYNSWORTH, Circuit Judge.

By an action in the District Court, Mrs. Spanos sought the recovery of all, or some, of the tax, interest, and penalties assessed to her, but arising out of the income of her deceased husband and his fraudulent failure to file a timely return. She contends, in the first instance, that the tardy filing of a joint return with her

husband was an ineffective election and without legal consequence. In the second instance, she contends that fraud penalties, assessed because of her husband's fraudulent failure to file a timely return, should not have been assessed to her when she was innocent of any fraud, had no taxable income, and the tardy joint return, in which she joined, was entirely free of fraud. The District Court denied her all relief, except for a small amount of interest admittedly overpaid. We agree that Mrs. Spanos was liable for the tax and interest, but conclude that, under the circumstances, the fraud penalty was improperly assessed to her.

It was stipulated that the plaintiff's husband fraudulently failed to file a timely income tax return for 1955, a return which was due to have been filed on April 15, 1956. On July 2, 1956, however, a joint return for 1955, duly signed by husband and wife, was filed, showing a tax liability of $6,635.96. After audit, the amount of the tax, as shown on the joint return, was accepted without change.

No part of the tax was paid when the return was filed and, nothing having been paid upon the admitted tax liability, there was a deficiency assessment in the amount of the tax liability, plus another $5,589.94 in penalties and interest.

Meanwhile, the husband had died on September 25, 1956. In May 1960, the widow paid $12,225.90, which included an overpayment of interest in the amount of $43.61, the recovery of which the District Court allowed.

It was also stipulated that the plaintiff, Mrs. Spanos, had no taxable income of her own during the year 1955, that she was entirely innocent of participation in her husband's fraudulent failure to file a timely return for that year, and that she associated herself with his tax obligations respecting that year only by joining in the tardy joint return filed on July 2, 1956, which has been found to be not only free of fraud but accurate and correct.

■■ The District Court in its opinion [1] dealt very effectively with plaintiff's first contention that a joint return belatedly filed is an ineffective election and imposed no legal obligations upon her. Since no previous election to file a single return had been made by the husband, and since the Commissioner had taken no steps to establish the husband's tax liabilities on the basis of a single return for 1955, there is no rule of law which makes the filing of a joint return for that year a nugatory act. Surely, there is no rule that every joint return which, for whatever reason, is not filed before midnight on the due date is wholly ineffective to entitle husband and wife to the income splitting advantage of the joint return.

For the reasons clearly set forth in its discussion of this contention, we conclude that the District Court correctly held that Mrs. Spanos, when she joined in the filing of the tardy joint return, became jointly and severally liable with her husband for the tax liability disclosed by the return, and for all interest and penalties arising out of that filing which might thereafter be assessed.

■ In this Court, the plaintiff makes a supplemental contention, based upon the provisions of § 6013(b) of the Internal Revenue Code. That Section permits the filing of a joint return after the filing date has passed, though separate timely returns had been filed. It imposes certain conditions upon the right, belatedly, to reverse such an election, however. Among those conditions is a requirement that the tax shown to be due by the tardy joint return must have been paid in full at or before its filing. The plaintiff contends that the same requirement should be imposed here, but § 6013(b) is clearly inapplicable, because neither husband nor wife had filed any return for 1955 until the joint return was filed, and they made no previous inconsistent election.

■ We think, however, that the penalty for fraudulent failure to file a timely return, which accrued on April 15, 1956, was improperly assessed to the innocent wife who did no more than join in the signing and filing of an accurate, joint

---

1. Spanos v. United States, D.Md., 212 F.Supp. 861.

return, untainted with fraud, more than two months later.

When the District Court considered this question, it had before it a memorandum opinion of the Tax Court in Cirillo v. Commissioner, 20 T.C.M. 956 (1961), in which the Tax Court had resolved the precise question in favor of the innocent wife and against the contention of the Commissioner. The District Judge was not persuaded by the reasoning of the Tax Court, and he reached a contrary conclusion. Subsequently, however, the Cirillo case was reviewed by the Court of Appeals for the Third Circuit, and the decision of the Tax Court on this point was affirmed. Cirillo v. Commissioner, 3 Cir., 314 F.2d 478. The lucid analysis of this question by the Court of Appeals for the Third Circuit is entirely applicable here:

"Finally, the Commissioner asks us to reverse the Tax Court's holding that Martha Cirillo, unlike her husband, is not liable for fraud penalties. The Commissioner argues that the wife's action in joining her husband in filing nonfraudulent delinquent returns for the years in question was sufficient to make her too liable for the fraud penalties.

"Earlier cases have decided that a wife who is a party to a fraudulent joint return may be held liable for the fraud penalties assessed on account of her husband's fraud in preparing that return, notwithstanding that she herself had no income, did not entertain any fraudulent intent, and, indeed, did not know that the return was fraudulent. Estate of Ginsberg v. Commissioner, 5th Cir., 1959, 271 F.2d 511; Furnish v. Commissioner, 9th Cir., 1958, 262 F.2d 727, 731–734; Kann v. Commissioner, 3d Cir., 1953, 210 F.2d 247, cert. denied 1954, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109; Boyett v. Commissioner, 5th Cir., 1953, 204 F.2d 205; Howell v. Commissioner, 6th Cir., 1949, 175 F.2d 240; Meyer J. Safra, 1958, 30 T.C. 1026, 1037. The feature which distinguishes the present case from those earlier cases and makes it one of first impression is that the joint returns here involved were themselves not fraudulent; rather fraud occurred and penalties attached earlier when the husband, with fraudulent intent, failed to file timely returns.

"Whether this distinction warrants a different result depends upon the interpretation given to section 51(b) (1) of the 1939 Code, ch. 2, 53 Stat. 27, as amended, 62 Stat. 115 (1948) (now Int.Rev.Code of 1954, § 6013(d) (3)), which provides that where a joint return is filed 'liability with respect to the tax' shall be joint and several. It is reasonable to view 'the tax' for which the return-signing wife is liable as including both the amount stated in the joint return and any deficiency assessments on account of the incorrectness, inadequacy or bad faith of that filing. If a wife, however innocently, joins in a fraudulent return, any additional assessment for fraud is a tax obligation created by that filing and measured by the difference between the tax that should have been reported and the amount the spouses jointly reported. This rationale supports the cited cases involving fraudulent joint returns.

"But in the present case the fraud penalty is neither imposed for nor measured by any deficiency based upon the joint return. Indeed, we have already pointed out in another connection that the deficiency upon which the present fraud penalty is based arose when the husband, with intent to evade taxes, failed to file a timely return. That deficiency did not subject the wife to any liability. Joseph A. Mundy, 1955, 14 CCH Tax Ct. Mem. 1067. In these circumstances, the fraud penalty is in no way dependent upon the joint return. For this reason it may reasonably be regarded as distinct from the tax liability which section 51(b) (1) imposes as a consequence of signing

a joint return. Of course, this analysis leaves a wife who elects to sign a joint return liable for the tax shown on the return and any deficiencies which may be determined in connection with that filing. Neither the language of the statute nor any consideration of equity or tax policy provides a persuasive reason for imposing a broader liability. Accordingly, we agree with the Tax Court that Mrs. Cirillo did not become liable for fraud penalties."

The United States here contends, however, that the result in Cirillo is impermissible. It says that, under § 6653, the fraud penalty is an addition to the tax, and, under § 6659(a) (2), the word "tax" is to be read as including the additions. It would have us conclude that because of § 6659 the word "tax" in § 6013(d) (3), providing for joint and several liability of cosigners of a joint return, should be read to include penalties and interest arising in respect to the filing, and, in addition, such previously accrued penalties as are measured by the tax (but here the word must be read as excluding the additions).

Obviously, the word "tax," as used in some sections and in some contexts, cannot be logically read to include every addition. Certainly, when the tax is a measure of the penalty, it does not include the penalty. These very technical interrelated statutes require construction and harmonization.

It is entirely reasonable to construe the word "tax" in § 6013(d) (3) as including interest, fraud and other penalties arising out of the filing of a joint return. Though a cosigning wife may be innocent of any complicity in the fraud of her husband and ignorant of it, when she joins him in the filing of a fraudulent return, she deliberately vouches for the return and associates herself with the fraud. By signing a tardy joint return, however, she does not vouch for her husband's conduct at a previous time when he failed to file a timely return reporting his income. By signing an honest joint return with her husband, she does not

associate herself with earlier fraud. If the return, which she does file, is uninfected with fraud and she is in no way implicated in any earlier fraudulent act, she ought not to be individually liable for fraud penalties arising out of her husband's earlier conduct.

This was the evident intent of the Congress when it adopted the Internal Revenue Act of 1938, which included the predecessor of § 6013(d). The Report of the Subcommittee of the Committee on Ways and Means, House of Representatives, 75th Cong., 3d Sess., on Proposed Revision of the Revenue Laws, 1938, pp. 49–50 said " * * * that if a husband and wife choose to file a joint return, each of them will be liable for the tax on their aggregate income, and for any deficiencies, penalties, and interest *in respect of the joint return* which may thereafter be determined." The words, "in respect of the joint return" limit the tax deficiency, penalties and interest for which there is to be joint liability to those arising out of the filing. If the return is fraudulent, the penalty arises "in respect of the joint return" and there is joint liability for it despite the innocence of one of the cosigners. On the other hand, a penalty fully accrued before filing the joint return because of the fraudulent conduct of one of the cosigners does not result in a penalty arising "in respect of the joint return," for which the other signer is liable. It may be true that the penalty imposed because of the earlier conduct of the husband is measured by the tax liability disclosed on the joint return, for, as we have held, the filing of a tardy joint return in these circumstances was allowable. If no joint return had been filed, the fraud penalty would have been measured by the husband's tax liability, computed on the basis of a separate return, but the fact that the allowable filing of the joint return may change the measure of the penalty for the earlier fraudulent conduct, does not mean that the penalty arose "in respect of the joint return."

Since the fraud penalty here assessed is based upon earlier conduct of the husband

and was fully accrued, assessable and collectible before the innocent wife joined in the accurate, honest, joint return, we conclude that penalty was improperly assessed to her. The estate of the husband remains liable for the fraud penalty, but so much of the wife's payment as represented the amount of the fraud penalty and interest thereon should have been refunded to her.

Affirmed in part, reversed in part and remanded.