T.C. Memo. 2000-341

UNITED STATES TAX COURT

INGO H. JENSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13005-98.           Filed November 6, 2000.

<u>Richard F. Battagline</u> and <u>Robert M. Stefancin</u>, for
petitioner.

<u>John M. Tkacik, Jr.</u>, and <u>Richard S. Bloom</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, <u>Special Trial Judge</u>:  This case is before the Court
on petitioner's motion for reasonable litigation costs pursuant

to section 7430 and Rules 230, 231, and 232,[1] filed April 14, 2000.

Neither party requested a hearing, and the Court concludes that a hearing is not necessary for the proper disposition of this motion. Although some facts appear in dispute, those facts are essentially irrelevant to our resolution of this matter.

FINDINGS OF FACT

At the time the petition was filed petitioner resided in Macedonia, Ohio.

Guild Mortgage Co. (Guild) issued petitioner a Form 1099-A, Acquisition or Abandonment of Secured Property, and a Form 1099-C, Cancellation of Debt, for petitioner's 1996 taxable year. The Form 1099-C indicated cancellation of debt income of $36,865. Petitioner did not include this amount in income on his 1996 Federal income tax return.

Respondent mailed a CP2000 letter (commonly known as a 30-day letter) to petitioner on January 13, 1998. The letter proposed to increase petitioner's 1996 taxable income to reflect income from the cancellation of the debt. The proposed increase resulted in an additional tax liability of $11,105 and the imposition of an accuracy-related penalty under section 6662 of $2,221.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The letter stated that the proposed inclusion of cancellation of debt income was the result of third-party information, specifically referencing the Form 1099-C received from Guild. The letter set forth in detail the procedures for petitioner to follow should he choose to contest the proposed changes. The letter also stated that petitioner's response was required by February 12, 1998, and that if petitioner failed to respond by February 12, 1998, respondent would presume that the proposed changes were correct and issue petitioner a notice of deficiency.

Petitioner retained the law firm of Brouse McDowell on March 27, 1998. No response to the 30-day letter, however, was submitted to respondent. On April 22, 1998, respondent issued a notice of deficiency to petitioner based on the changes proposed in the 30-day letter. On July 23, 1998, Jeffrey W. Leonard (Mr. Leonard), an attorney with Brouse McDowell, filed a petition on behalf of petitioner with this Court. The petition alleged that petitioner was insolvent at the time the debt was canceled and, therefore, no income was recognized. See sec. 108.

Petitioner never requested an Appeals Office conference before the filing of his petition with the Tax Court. When Mr. Leonard was offered a conference by Appeals Officer John Mazur during a telephone conversation on September 17, 1998, the offer was declined. Instead, Mr. Leonard promised the Appeals officer

that he would provide respondent documentation proving petitioner's insolvency at the time of the cancellation of the debt.

Despite the Appeals officer's followup attempts to contact Mr. Leonard by telephone on October 16, 1998, and by letter dated October 28, 1998, Mr. Leonard failed to provide the promised documentation relating to the alleged insolvency. On January 20, 1999, Associate District Counsel Dennis Driscoll sent Mr. Leonard a letter seeking to explore the possibility of settlement and again requesting the information relating to petitioner's insolvency.

On January 29, 1999, Robert M. Stefancin (Mr. Stefancin), another attorney with Brouse McDowell, informed the Appeals officer that Mr. Leonard was no longer with the firm. Mr. Stefancin requested additional time to enter an appearance so that he could respond to the letter sent by Mr. Driscoll. As of February 23, 1999, Mr. Leonard remained the attorney of record, and no other attorney had filed an entry of appearance. The Appeals officer never received the information or documentation promised regarding the insolvency issue. On February 23, 1999, the case was transferred to the District Counsel's Office. A letter was sent to Mr. Leonard informing him of this action.

On February 24, 1999, John M. Tkacik (Mr. Tkacik), an attorney with the Office of District Counsel, left a telephone

message for Mr. Leonard.  On February 26, 1999, Mr. Leonard returned Mr. Tkacik's telephone call.  During the ensuing conversation Mr. Leonard was informed that:  (1) Respondent was not permitted to contact petitioner directly because of Mr. Leonard's entry of appearance, (2) the case was calendared for the Tax Court trial session in Cleveland, Ohio, commencing on April 26, 1999, and (3) a conference should be scheduled to comply with the Branerton[2] requirements.  Mr. Leonard stated that he would discuss the matter with his client and with Mr. Stefancin, and indicated that he might withdraw as attorney of record.

On March 1, 1999, Mr. Leonard called Mr. Tkacik to inform him that the necessary documents for his withdrawal as attorney of record as well as the necessary documents for substitution of counsel would be prepared and filed.  To date, no withdrawal as attorney of record by Mr. Leonard has been received by the Tax Court.  Richard F. Battagline (Mr. Battagline), another attorney at Brouse McDowell, entered an appearance in this case on March 8, 1999.

During a telephone conference between Messrs. Tkacik and Battagline on March 19, 1999, Mr. Battagline raised the issue

---

[2]     See Branerton Corp. v. Commissioner, 61 T.C. 691 (1974), requiring that parties make reasonable informal efforts to obtain needed information voluntarily before resorting to formal discovery.

whether an erroneous Form 1099-C had been issued because the debt discharged was nonrecourse (the erroneous Form 1099-C issue). Mr. Tkacik requested information to support this argument as well as reiterated respondent's request for documentation regarding the insolvency issue. Some documentation was forwarded to Mr. Tkacik on March 31, 1999. Mr. Tkacik found the documentation failed to prove petitioner's insolvency and did not address the erroneous Form 1099-C issue. Additional documentation was received by Mr. Tkacik on April 13, 1999. Mr. Tkacik found that this additional documentation again failed to substantiate the insolvency claim and failed to address the erroneous Form 1099-C issue.

Finally, in a conference call conducted on April 16, 1999, Mr. Battagline set forth arguments of law and facts sufficient to set the basis for determining that the Form 1099-C was erroneous. On April 22, 1999, Mr. Battagline filed a motion for leave to amend petition and motion for continuance of trial, which the Court granted.

Correspondence resumed between the parties beginning July 14, 1999. Mr. Battagline provided Mr. Tkacik with legal arguments establishing that the canceled debt was nonrecourse. Mr. Tkacik reached the same conclusion and, on September 8, 1999, informed Mr. Battagline.

The final issue involved petitioner's treatment of the canceled nonrecourse debt. On September 8, 1999, Mr. Tkacik informed Mr. Battagline that respondent was now treating the matter as a taxable exchange under section 1001 and that respondent therefore needed documentation regarding petitioner's basis in the property. On November 29, 1999, Mr. Battagline contacted Mr. Tkacik, stating that the required documentation would be furnished. Mr. Tkacik received the documentation on January 6, 2000. After an initial disagreement over the tax treatment of the exchange and on the basis of additional information received by respondent on February 18, 2000, respondent conceded the case on February 24, 2000. On April 14, 2000, the parties filed a stipulation of settlement. On the same date, petitioner's motion for litigation costs of $15,778.29 was filed.

## OPINION

Section 7430 provides that, in any court proceeding brought by or against the United States, the "prevailing party" may be awarded reasonable litigation costs if the "prevailing party" establishes that he exhausted the administrative remedies available within the Internal Revenue Service and did not unreasonably protract the proceedings. See sec. 7430(b)(1), (3). For petitioner to qualify as a "prevailing party" for purposes of section 7430, it must be established that: (1) The position of

the United States in the proceeding was not substantially justified; (2) petitioner substantially prevailed with respect to either the amount in controversy or with respect to the most significant issue presented; and (3) petitioner met the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) (1994) at the time the petition was filed.  Sec. 7430(c)(4).  Respondent has the burden of proving that the position of the United States was substantially justified, and petitioner bears the burden of proof with respect to all other requirements.  See sec. 7430(c)(4)(B); Rule 232(e); Maggie Management Co. v. Commissioner, 108 T.C. 430, 437 (1997).

Respondent concedes that petitioner substantially prevailed with respect to the amount in controversy, and that petitioner met the net worth requirements.  Respondent maintains, however, that respondent's position was substantially justified, that petitioner failed to exhaust his administrative remedies, and that petitioner unreasonably protracted the proceedings.  The requirements of section 7430 are conjunctive; therefore, failure to meet any one of the requirements will preclude an award of costs.  See Minahan v. Commissioner, 88 T.C. 492, 497 (1987). While we have great difficulty with petitioner's argument that respondent's position was not substantially justified, we do not believe that it is necessary to reach that question.  In our

view, petitioner did not exhaust his administrative remedies, and we find no reason to delve into the other requirements.

Petitioner never requested an Appeals conference with respondent although such a conference was available. Section 301.7430-1(b)(1), Proced. & Admin. Regs., provides that, where an Appeals conference is available, administrative remedies are exhausted only when the taxpayer (1) participates in an Appeals conference before petitioning this Court, or (2) requested such a conference (as applicable herein by filing a written protest with respondent) and had his request denied. See Lloyd v. Commissioner, T.C. Memo. 2000-299; see also Swanagan v. Commissioner, T.C. Memo. 2000-294. Additionally, after filing the petition, petitioner was contacted by the Appeals officer and offered a post-petition Appeals conference. Petitioner declined the opportunity to participate in the offered Appeals conference.

Petitioner asserts that he would have provided documentation to respondent sufficient to satisfy the exhaustion of administrative remedies requirement if only respondent had not been hasty in issuing a notice of deficiency, and then, after the petition had been filed, had respondent not quickly transferred the case to the District Counsel's Office. We find this argument meritless. The fact is that petitioner and his attorney ignored the 30-day letter. That letter set forth a clear deadline for responding to the proposed changes. Petitioner failed to even

retain counsel until a month after this deadline had passed. Then, after retaining counsel, petitioner continued to ignore the 30-day letter. It was not until respondent mailed the notice of deficiency, more than 2 months after the deadline set forth in the 30-day letter and more than a month after petitioner had retained counsel, that petitioner made any attempt to contact respondent.

Petitioner argues that pursuing the Appeals remedy would have been futile. See Phillips v. Commissioner, 88 T.C. 529 (1987), affd. in part and revd. in part on other grounds 851 F.2d 1492 (D.C. Cir. 1988). In Phillips the taxpayer was unaware of the issue until after his case was docketed in the Tax Court. Furthermore, we found that the Commissioner's insistence on pursuing the matter through litigation and the refusal to consider the effect of his own revenue rulings "demonstrate[d] that any discussion of this issue that petitioner attempted was futile." Id. at 533. But there is no suggestion here that respondent's mind was closed and that development of the case through the administrative Appeals process would have been unproductive. The fact is that petitioner never attempted to get the matter settled before the case was calendared for trial.

Petitioner also cites Cole v. Commissioner, T.C. Memo. 1996-375. In Cole we found that the taxpayer had satisfied the

exhaustion of administrative remedies requirement of section 7430 despite not having requested an Appeals conference.

The taxpayer responded in writing to the Commissioner's 30-day letter setting forth her arguments and providing substantiation. She kept up a continuous dialog with the Commissioner in an attempt to settle the matter and filed a petition with the Tax Court only after the Commissioner failed to cooperate. We found that the taxpayer had exhausted her administrative remedies because of her ongoing dialog with the Commissioner, the Commissioner's failure to respond to several of her letters, the Commissioner's filing of a notice of deficiency in the middle of the negotiations process, and her lack of reason to believe that the negotiations had reached an impasse. See id.

The facts in Cole are distinguishable from those in this case. Petitioner ignored the 30-day letter, delayed providing requested documentation, and rejected respondent's offer of a post-petition Appeals conference. Meanwhile, respondent stood by, ready, willing, and able to proceed with settlement discussions. If petitioner had acted promptly, this matter could have been resolved shortly after petitioner received the 30-day letter. This is not conduct that we condone. See Uddo v. Commissioner, T.C. Memo. 1998-276.

Accordingly, petitioner's motion will be denied.

<u>An appropriate order and</u>

<u>decision will be entered</u>.